UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JIN SONG<br><br>   *Plaintiff*,<br><br>v.<br><br>PIL, L.L.C., AND PUBLICATIONS INTERNATIONAL, LTD.<br><br>   *Defendants.* | § § § § § § § § § § § | **FILED: MAY 14, 2008**<br>**08CV2807   AEE**<br>**JUDGE GRADY**<br>**MAGISTRATE JUDGE NOLAN**<br>Civil Action No. _____ |

## COMPLAINT (DEMAND FOR JURY TRIAL)

Plaintiff Jin Song ("Song") files this Complaint against Defendants PIL, L.L.C. ("PIL") and Publications International, Ltd. ("Publications International"), and alleges the following:

### I.
### INTRODUCTION

1. This is a civil action for Breach of Contact that arises under the laws of Illinois.

2. Plaintiffs bring this action seeking damages for Defendants' breach of an Asset Purchase Agreement ("APA").

### II.
### THE PARTIES

3. Plaintiff Jin Song is an individual residing in Texas.

4. Defendant PIL, L.L.C. is an Illinois limited liability company with a principal place of business at 7373 N. Cicero Ave., Lincolnwood, IL 60712. PIL's registered agent for service of process is MS Registered Agent Services with a registered office at 191 N. Wacker Dr., Ste. 1800, Chicago, IL 60606.

5. Defendant Publications International, Ltd. is an Illinois corporation with a principal place of business at 7373 N. Cicero Ave., Lincolnwood, IL 60712. Publications International's registered agent for service of process is MS Registered Agent Services I with a registered office at 191 N. Wacker Dr., Ste. 1800, Chicago, IL 60606.

## III.
## JURISDICTION AND VENUE

6. Plaintiff is and was at all times mentioned herein a citizen of the State of Texas.

7. Defendant PIL, L.L.C. is an Illinois limited liability company organized under the laws of the State of Illinois, having its principle place of business in the State of Illinois.

8. Defendant Publications International, Ltd. is an Illinois corporation incorporated under the laws of the State of Illinois, having its principle place of business in the State of Illinois.

9. The jurisdiction of the Court over the subject matter of this action is predicated on 28 U.S.C. Section 1332. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs. Defendants have consented to the jurisdiction of the federal courts of Chicago for the resolution of any disputes arising out of the Asset Purchase Agreement that is the subject of this lawsuit.

# IV.
# BACKGROUND

10.　　Plaintiff Jin Song is a prolific inventor and has contributed numerous inventions in various arts. One of Song's inventions is that which is sold by Defendants under the registered trademark Story Reader.

11.　　Song filed his first patent application for his Story Reader invention on August 9, 1999. A non-provisional application claiming priority to the first application was filed on April 25, 2000. This application was supplemented with an additional continuation-in-part application filed on October 16, 2002.

12.　　While the applications were pending, Song negotiated with Defendants for the sale of the Story Reader invention and entered into an Asset Purchase Agreement dated May 9, 2003 ("APA") that included the sale of the intellectual property and other assets related to the Story Reader invention. Subsequently, the first application filed by Song was granted and issued as U.S. Patent No. 6,763,995 on July 20, 2004. The second application filed by Song was also granted and issued as U.S. Patent No. 7,111,774 on September 26, 2006.

13.　　After the Story Reader assets had been conveyed, Defendants filed a continuation of the original non-provisional application filed by Song. This application was granted and issued as U.S. Patent No. 7,201,317 on April 10, 2007. Defendants also filed a divisional application on April 28, 2006 from the second application filed by Song. This application was granted and issued as U.S. Patent No. 7,290,700. Neither of the foregoing applications filed by Defendants contained any new matter that had not already been disclosed in the applications originally filed by Song. On information and belief, Defendants have filed additional applications on modifications to the Story Reader invention.

14. The Story Reader invention provides for an electronic book reader system. In one embodiment, the system invented by Song includes a book holder, a book, and a storage media containing audio information related to the text of multiple books. The user places a book on the book holder. When the pages are turned, the system identifies the book and the page to which the book is turned and plays the appropriate audio from the storage media.

15. As part of the consideration for the assets purchased pursuant to the APA, Defendant PIL agreed to pay Song two million dollars ($2,000,000) in cash at the closing pursuant to the APA. This consideration was paid by Defendants.

16. Additionally, Defendant PIL agreed to pay and Defendant Publications agreed to guarantee payment of royalties every six (6) months immediately following the closing date in accordance with the following schedule:

    1. Zero percent (0%) of the first Fifty Million U.S. Dollars ($50,000,000) of the Net Sales;
    2. Two and one-half percent (2.5%) of the next One Hundred Million U.S. Dollars ($100,000,000) of Net Sales; and
    3. One and one-half percent (1.5%) of the Net Sales thereafter.

17. Defendants have paid a portion of the ongoing royalties due under the APA, but have refused to pay royalties on the sales of the My First Story Reader product and the Story Reader Video + product, modified versions of the Story Reader product.

18. In connection with defining the scope of the products on which royalties were due, the parties specified that royalties would be owed on "the current version of the Story Reader product and any future versions thereof that uses magnetic page activation to read a story aloud." Additionally, the APA provides that if the purchaser substitutes light, conductivity, or microwave page activation in the platform of the type covered under the pending applications for

the Story Reader invention, such products shall be included in the definition of products on which royalties are owed.

19.     The APA expressly includes any versions of the Story Reader invention disclosed or claimed in the patent applications pending at the time the assets were conveyed to Defendants under the APA.  The APA was crafted to prevent Defendants from being able to avoid royalty payments by making modifications to the existing Story Reader product that were disclosed or claimed by the patent applications conveyed.

20.     Plaintiffs relied on Defendants' representations that they would pay royalties on the products covered by the patent applications conveyed pursuant to the APA.  Had Plaintiffs known at the time the APA was executed that Defendants intended to design a modified product covered by the claimed patent applications to avoid paying royalties, Plaintiffs would not have executed the APA.

21.     On or about March 21, 2005, Mr. Jeffrey J. Coyle ("Coyle"), COO/CFO of Publications International, sent a letter to Song reporting the cumulative Net Sales of the Products, as those terms are defined in the APA, to be $25,092,729 as of October 31, 2004.

22.     On or about March 1, 2006, Coyle sent a letter to Song reporting the cumulative Net Sales of the Products, as those terms are defined in the APA, to be $39,954,237 as of October 31, 2005.

23.     On or about July 12, 2006, Coyle sent a letter to Song reporting the cumulative Net Sales of the Products, as those terms are defined in the APA, to be $44,049,257 as of April 30, 2006.

24.     On or about February 8, 2007, Coyle sent a letter to Song reporting the cumulative Net Sales of the Products, as those terms are defined in the APA, to be $51,076,225

as of October 31, 2006. When reporting the cumulative Net Sales as of October 31, 2006, Defendants, for the first time, deducted sales of the My First Story Reader product. However, there was no indication in Coyle's February 8, 2007 letter that previous calculations were in error. The prior reports referenced in paragraphs 21-23 above all included sales of My First Story Reader as part of the royalty calculations.

25. Song was first made aware of Defendants' position that the My First Story Reader product was outside the scope of the royalty agreement when his auditor, Royalty Control Group Company, reported on or about February 15, 2007 that the My First Story Reader sales were not included by Defendants in the royalty calculations.

26. On or about February 21, 2007, Coyle sent a letter to Song reporting, for the first time, that a $100,000 transfer fee paid to Disney was an offset against any royalties owed, and that no royalties were due.

27. On or about February 21, 2007, Song sent a letter to Coyle indicating that the My First Story Reader product was covered by the royalty provision of the APA. Song requested that the royalty calculations be corrected. Song renewed this request in a letter dated March 5, 2007. Defendants refused his requests.

28. On or about May 30, 2007, Coyle sent a letter to Song reporting the cumulative Net Sales of the Products, as those terms are defined in the APA, to be $53,253,201 as of April 30, 2007.

29. On or about March 3, 2008, Defendants sent a letter to Plaintiffs explaining their position as to why sales of My First Story Reader should not be included in the royalty calculations.

30. Defendants own description of the product indicates that it falls within the claims of the '774 Patent and therefore, if practiced by another would be an infringement of the '774 Patent. Yet, Defendants advance the frivolous arguments that the product does not fall within claim 17 of the '774 patent application because "(1) there is no overall circuit, and in any event, (2) no characteristic of any individual circuit is affected by turning a page containing another circuit."

31. The diagram attached to Defendants' March 3, 2008 letter shows capacitors connected in parallel on one end to the MCU output AC signal and on the other end to an MCU Input. The diagram shows that as capacitors are added or taken away by turning pages of the My First Story Reader, the binary number value read at the MCU inputs changes. As capacitors are added, the binary number increases. As capacitors are taken away, the binary number decreases. Therefore, My First Story Reader falls within the scope of the claims of the '774 Patent application.

32. Although Defendants state in the March 3, 2008 letter that "none of the other claims of the applications appear to be relevant," claim 1 of the '774 patent application is also relevant.

33. Claim 1 of the '774 patent application, as it existed on the date of the APA, reads as follows:

> 1. A system for displaying audio with text, comprising:
>
> a book holder;
>
> a book having a plurality of positions, at least some of the positions having indicators which are detectable by the holder;
>
> wherein the placement of the indicators identifies the book.

34. According to Defendants' March 3, 2008 letter, "two capacitors are used for book ID." In particular, when the book holder detects that no capacitors exist at positions C7 and C8, that indicates that no book is present. When the book holder detects that no capacitor is present at C7, but a capacitor is present at C8, this indicates "Book 1" is present. When the book holder detects that a capacitor is present at C7, but not at C8, this indicates "Book 2" is present. When the book holder detects that a capacitor is present at both C7 and C8, this indicates that "Book 3" is present. Therefore, the placement of a capacitor at positions C7 and C8 as shown on the diagram determines the identification of the book.

35. Plaintiff has become aware of a new version of the Story Reader invention that Defendants have begun selling called "Story Reader Video +." On information and belief, the Video + product operates similar to the original Story Reader and is covered by the claims of the patent applications conveyed to Defendants from Plaintiff.

36. The Video + product comprises a book holder and a book having pages with indicators detectable by the book holder. The placement of the indicators are used to identify the book.

37. On information and belief, the Video + product uses the same system used by the My First Story Reader product to identify the book and to identify the page to which the book is turned. Thus, royalties should be paid on the Video + product for the same reasons that royalties should be paid on the My First Story Reader product.

38. Defendants have failed to pay royalties on the sales of My First Story Reader and the Story Reader Video +. This failure to pay royalties is a breach of the APA.

## V.
## COUNT I—BREACH OF CONTRACT

39. Paragraphs 1-38 are incorporated herein by reference as if set forth at length.

40. Song entered into the APA on or about May 9, 2003. The APA is a valid and enforceable contract.

41. Pursuant to the APA, Song conveyed his intellectual property rights to the Story Reader product line, including the rights to the '774 Patent. Part of the consideration for the APA was the payment of an ongoing royalty for products covered by the intellectual property conveyed.

42. Plaintiff has performed all conditions precedent.

43. Defendants' failure pay the royalties required by the APA is a breach of contract.

44. Song has suffered damages as a result of Defendants' ongoing breach of the contract.

## VI.
## COUNT II—UNJUST ENRICHMENT/QUANTUM MERUIT (ALTERNATIVE)

45. Paragraphs 1-44 are incorporated herein by reference as if set forth at length.

46. Song was the owner of significant intellectual property, know-how, and good will associated with the Story Reader product he developed using significant resources, all of which were conveyed to Defendants under the belief that Defendants would pay Plaintiffs on-going royalties for any products covered by said intellectual property.

47. Defendants modified the Story Reader product in the design of My First Story Reader and the Story Reader Video +. These modifications are covered by the intellectual property conveyed to Defendants by Song.

48. Defendants have refused to make royalty payments for sales of My First Story Reader and the Story Reader Video +. Allowing Defendants to retain the benefit of the

intellectual property conveyed by Song without paying royalties will result in unjust enrichment to Defendants.

49. Song has suffered damages as a result of Defendants' refusal to pay royalties.

## VII.
## COUNT III—PROMISSORY ESTOPPEL (ALTERNATIVE)

50. Paragraphs 1-9 are incorporated herein by reference as if set forth at length.

51. Defendants made representations and promises to Song that royalties would be paid on products covered by the intellectual property conveyed to Defendants.

52. At the time of said promises, it was reasonable and foreseeable for Defendants to expect that Plaintiffs would rely on these promises.

53. At the time of said promises, Song relied on the promises to his detriment by conveying assets to Defendants that had they retained the assets, could have been sold to others.

54. Defendants breached their promise to pay Song a reasonable royalty on products covered by the intellectual property conveyed.

55. Song has suffered damages as a result of Defendants' refusal to pay royalties owed.

## VIII.
## COUNT IV—EQUITABLE ESTOPPEL (ALTERNATIVE)

56. Paragraphs 1-55 are incorporated herein by reference as if set forth at length.

57. Defendants made representations and promises to Song that royalties would be paid on products covered by the intellectual property conveyed to Defendants.

58. Song relied on the promises to his detriment by conveying assets to Defendants that had he retained the assets, could have been sold to others.

59. Defendants induced Song to rely on their promises to the benefit of Defendants in that Defendants did not pay the royalty payments they promised to pay.

60. Plaintiffs relied upon Defendants' promises and conduct and was induced through Defendants' promises and took actions in reliance thereon.

61. As a result of Defendants' inducement and misrepresentations to Plaintiffs, Defendants should be equitably estopped from denying the payment of royalties.

## IX.
## COUNT V--CONVERSION

62. Paragraphs 1-61 are incorporated herein by reference as if set forth at length.

63. Defendants, without authorization, have wrongfully assumed control, dominion, and ownership of Songs' royalty payments. Said payments may be specifically identified as belonging to Song.

64. Defendants have the right to said royalty payments and have a right to immediate possession of said payments, absolutely and unconditionally.

65. Song has demanded possession of the royalty payments, but Defendants have refused to turn over said royalty payments.

66. Defendants have at all times been conscious of the fact that said royalty payments belong to Song, but have wrongly acted with utter disregard of this known duty to Song, taking untenable positions in bad faith as to why said royalty payments do not belong to Song.

67. Defendants knew that the conversion of the royalty payments owed to Song would injure him. Song is therefore entitled to punitive damages against Defendants.

## X.
## COUNT VI—BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

68. Paragraphs 1-67 are incorporated herein by reference as if set forth at length.

69. Under the APA, Defendants owe Song a duty of good faith and fair dealing in connection with their performance of the agreement.

70. By withholding royalty payments owed, Defendants have acted in bad faith. There is no reasonable position for withholding the royalty payments, and therefore, Defendants have breached the implied duty of good faith and fair dealing, causing injury to Song.

## XI.
## COUNT VII— CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

71. Paragraphs 1-70 are incorporated herein by reference as if set forth at length.

72. Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, when they entered the APA with Song knowing that they intended to make slight modifications to the Story Reader invention and then claim that no on-going royalties are due on the modified products.

73. Defendants represented that they would pay ongoing royalties but have failed to pay royalties on My First Story Reader and Story Reader Video +. Defendants acted in bad faith to deceive Song into executing the APA so that he would transfer all of the intellectual property to Defendants. Now that Defendants have the intellectual property, they are refusing to properly compensate Song as they promised for the revenue they have generated as a result of the intellectual property conveyed.

74. Song's actions in conveying his intellectual property to Defendants implicates consumer protection concerns in that a large company took advantage of an individual by promising to pay him a royalty for his valuable intellectual property. Defendants, left undeterred, will continue to deceive other small inventors into conveying their intellectual

property with grand promises of a future income stream. Granting relief will deter Defendants and other companies from taking advantage of consumers in a similar manner.

75. Moreover, giving Defendants a monopoly for the products at issue when they did not invent the claimed inventions, nor pay a reasonable royalty as agreed, allows them to unfairly inflate the price of the products to the detriment of consumers.

76. Song has been damaged by the deceptive trade practices of Defendants and is entitled to damages, his attorney's fees and punitive damages under the Act as a result of Defendants' reckless disregard for Song's rights.

## XII.
## PRAYER FOR RELIEF

77. For these reasons, Plaintiff asks that judgment be entered against Defendants and in favor of Plaintiff on the forgoing causes of action, the judgment awarding Plaintiff:

    a.    Actual damages.

    b.    Pre-judgment and post-judgment interest as allowed by law.

    c.    Costs of suit and attorney fees.

    d.    Punitive damages.

    e.    All other relief, in law and in equity, to which Plaintiffs may be entitled.

## XIII.
## JURY DEMAND

Plaintiffs request that the trial of this matter be heard before a jury pursuant to Federal Rule of Civil Procedure 38.

Dated this <u>14th</u> day of May, 2008

                Respectfully submitted,


                _____/s/ Vincent J. Allen_____
                **KATTEN MUCHIN ROSENMAN LLP**
                **Timothy J. Vezeau**
                **Michael A. Dorfman**
                **Sharyn M. Castle**
                **525 West Monroe Street**
                **Chicago, IL 60661-3693**
                **Telephone: 312.902.5200**
                **Facsimile: 312.902.1061**

                **CARSTENS & CAHOON, LLP**
                **Vincent J. Allen**
                **Federal ID No. 24012209**
                **13760 Noel Road, Suite 900**
                **Dallas, Texas  75240**
                **Telephone: (972) 367-2001**
                **Facsimile: (972) 367-2002**


<u>**OF COUNSEL:**</u>
**David W. Carstens**
State Bar No. 03906900
**CARSTENS & CAHOON, LLP**
13760 Noel Road, Suite 900
Dallas, Texas  75240
(972) 367-2001 (Telephone)
(972) 367-2002 (Facsimile)