**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JIN SONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )            No.  08 C 2807 |
| | ) |
| PIL, L.L.C., and | ) |
| PUBLICATIONS INTERNATIONAL, LTD., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss Counts II through VI of the complaint.[1]  For the reasons explained below, the motion is granted.

**BACKGROUND**

This is a diversity action in which plaintiff alleges breach of contract and several other state-law claims.  Plaintiff, Jin Song, is a Texas citizen.  Defendant PIL, L.L.C.  is a single-member limited liability company whose single member is an Illinois citizen, and defendant Publications International, Ltd. is also an Illinois citizen.  We will refer to defendants collectively as "PIL."

---

[1]/  Defendants filed the motion to dismiss prior to plaintiff's filing of the Second Amended Complaint.  The amendment was necessary for plaintiff to properly allege the citizenship of PIL, L.L.C.; because the Second Amended Complaint contains no other substantive changes, we will treat the motion to dismiss as applying to the Second Amended Complaint.

Plaintiff's allegations, which are taken as true and viewed in a light most favorable to plaintiff for the purposes of this motion, are as follows. Song is an inventor who created, among other things, a page and book identification system for a book reader. Song's invention was used to develop a product dubbed "Story Reader," a children's electronic storybook reader. Song and his family worked for four years to launch the Story Reader, Inc. corporation, investing more than $2 million. After establishing a position in the market for Story Reader, Song and his family explored the possibility of selling the business because they did not have the resources to continue funding it.

PIL expressed an interest in purchasing the assets of Song's company, and on May 9, 2003, Song and PIL entered into a contract titled "Asset Purchase Agreement" ("APA"). The parties agreed that PIL would purchase from Song "certain assets, intellectual property, and all other related rights, products and accessories used, sold or licensed in connection with the ***Story Reader*** product line (collectively, the "**Business**") which shall include but not be limited to rights in and to the ***Story Reader*** electronic base reader unit, cartridges, hardware, software, printed books and other associated literary works and audio recordings." (Mem. in Support of Mot. to Dismiss, Ex. A, APA at 1.) In return for the assets of Song's company, which included all intellectual property rights relating to the Business as well as product inventory, customer

lists, and and business files, PIL agreed to pay $2 million in addition to royalties on future sales of certain products. The royalties were to be paid every six months, and Song was to receive no royalties on the first $50 million of Net Sales (as defined by the APA); 2.5 percent of the next $100 million of Net Sales; and 1.5 percent of the Net Sales thereafter. The APA provides that Song is entitled to royalties for a ten-year period on the following Products:

> (i) the current version of the Story Reader product and any future versions thereof that uses [sic] magnetic page activation to read a story aloud; (ii) any newly created product that uses the Story Reader name and that uses magnetic page activation to read a story aloud (the Products described in (i) and (ii) shall collectively be referred to as the "**Platform**"), and; (iii) any associated book inserts currently published or to be published in the future utilizing the Platform. If [PIL] substitutes light, conductivity or microwave page activation in the Platform, of the type covered under the patent applications listed on the Intellectual Property Schedule 1.1.2, such substitutions shall be included in the definition of Products.

(APA at 4, ¶ 2.1.) The APA also provides that once per calendar year during the ten-year royalty period and upon thirty days' written request, PIL would provide Song with "books and records sufficient to enable [Song] to verify the calculation" of royalties due. (APA at 13, ¶ 9.3.)

After the parties executed the APA, PIL paid Song certain royalties that Song claims represent only a portion of the royalties due. Song requested that PIL provide additional sales

information in the periodic royalty reports that he received, but defendants failed to provide the information. Thereafter, Song exercised his right under the APA to review PIL's records and conducted an audit. Song alleges that as a result of the audit, he discovered that PIL was not paying him royalties on a product called "My First Story Reader."[2] According to Song, he is owed royalties with regard to this product and another product called Story Reader Video Plus because they both use his invention. PIL has refused to pay Song royalties on the sales of these products. After Song filed this lawsuit, PIL stopped paying Song royalties altogether.

The Second Amended Complaint contains six counts. Plaintiff asserts claims for breach of contract (Count I); unjust enrichment/quantum meruit, pled in the alternative (Count II); promissory estoppel, pled in the alternative (Count III); conversion (Count IV); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V); and common-law fraud (Count VI). Plaintiff seeks actual damages, punitive damages, interest, attorneys' fees, and costs.

Defendants now move to dismiss Counts II through VI.

---

[2] The complaint alleges that PIL originally included sales of the My First Story Reader product in its calculations of the royalties payable to Song, but changed its position and began excluding these sales in a report sent to Song in February 2007. (Second Am. Compl. ¶ 35.) In a March 2008 letter to Song, PIL explained its position that the product does not fall within the claims of Song's relevant patent application. (Id. ¶ 40.)

**DISCUSSION**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999). However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" <u>EEOC v. Concentra Health Servs., Inc.</u>, 496 F.3d 773, 776 (7th Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Our Court of Appeals has cautioned courts and litigants against "overread[ing]" <u>Bell Atlantic</u>, <u>see</u> <u>Limestone Dev. Corp. v. Village of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008), and the Supreme Court has since dispelled the notion that it had abandoned notice pleading. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). So, "heightened fact pleading of specifics" is still not required. <u>Killingsworth v. HSBC Bank Nevada, N.A.</u>, 507 F.3d 614, 618 (7th Cir. 2007). Nevertheless, the complaint must "contain enough facts to state a claim to relief that is plausible on its face." <u>Id.</u>

PIL contends that this is a simple breach of contract action that will turn on the language of the APA specifying which products are royalty-bearing, and that Song's other claims must be dismissed.  We will address those claims in turn.

**A.   Unjust Enrichment and Promissory Estoppel (Counts II and III)**

Unjust enrichment and quantum meruit claims are quasi-contract claims that allow courts to imply contracts in order to prevent injustice.  <u>Hayes Mech., Inc. v. First Indus., L.P.</u>, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004).  To state an unjust enrichment claim under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  <u>HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.</u>, 545 N.E.2d 672, 679 (Ill. 1989).  "A party seeking recovery on a quantum meruit theory must demonstrate the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention of the benefit in the absence of any compensation."  <u>First Nat'l Bank of Springfield v. Malpractice Research, Inc.</u>, 688 N.E.2d 1179, 1185 (Ill. 1997).

Promissory estoppel is a theory of recovery that provides a remedy "for those who rely to their detriment, under certain circumstances, on promises, despite the absence of any mutual

agreement by the parties on all the essential terms of a contract." Newton Tractor Sales, Inc. v. Kubota Tractor Corp., --- N.E.2d ----, 2009 WL 886866, at *5 (Ill. Apr. 2, 2009). To state a claim for promissory estoppel, plaintiff must allege (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied on the promise to its detriment. Id. at *3.

PIL maintains that Song's unjust enrichment/quantum meruit and promissory estoppel claims must be dismissed because they are inconsistent with Song's breach of contract claim. Song acknowledges that the claims are inconsistent with his contract claim but argues that they should not be dismissed because they are pled in the alternative.

Song is correct that he may plead in the alternative, see Federal Rule of Civil Procedure 8(d)(2), and he has avoided the problem of incorporating allegations of an express contract in his unjust enrichment and promissory estoppel claims. He has nonetheless failed to state quasi-contract or estoppel claims. "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." Utility Audit, Inc. v. Horace Mann Serv. Corp., 383 F.3d 683, 688-89 (7th Cir. 2004) (citing Illinois law). Similarly, "[p]romissory estoppel is meant for cases in which a

promise, not being supported by consideration, would be unenforceable under conventional principles of contract law. When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill. . . . Promissory estoppel is not a doctrine designed to give a party a second bite at the apple in the event it fails to prove a breach of contract." <u>All-Tech Telecom, Inc. v. Amway Corp.</u>, 174 F.3d 862, 869-70 (7th Cir. 1999) (internal quotation marks omitted).

The wrongful conduct alleged by Song in the alternative claims does not fall outside the contract. Song alleges in Counts II and III that he conveyed certain assets to PIL, including his intellectual property, and that PIL agreed, but failed, to pay Song royalties on products using that intellectual property. These claims concern the same subject matter as the contract claim and therefore may not be pursued. <u>See</u> <u>Cromeens, Holloman, Sibert Inc. v. AB Volvo</u>, 349 F.3d 376, 397 (7th Cir. 2003). There is no dispute here that the parties entered into a written contract; PIL admits that it entered into the APA with Song and attaches a copy to its motion. Song does not allege in Counts II and III that no contract existed; he pleads those claims "[i]n the event that a contract does not cover the products on which Defendants refuse to pay royalties." (Second Am. Compl. ¶¶ 58, 63.) But "[q]uasi-contract remedies do not step in at the moment a contract claim

ends, i.e., when there is no breach of contract." <u>Northern Trust Co. v. MS Secs. Servs., Inc.</u>, Nos. 05 C 3370 & 05 C 3373, 2006 WL 695668, at *13 (N.D. Ill. Mar. 15, 2006). Where a valid contract exists, a plaintiff cannot use theories like unjust enrichment and promissory estoppel to shift the risk that plaintiff knowingly assumed. <u>Cromeens</u>, 349 F.3d at 397. Accordingly, Counts II and III will be dismissed with prejudice.

**B.   Conversion (Count IV)**

To state a claim for conversion, a plaintiff must allege (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he has made a demand for possession of the property; and (4) defendant has wrongfully assumed control, dominion, or ownership of the property without authorization. <u>See</u> <u>Loman v. Freeman</u>, 890 N.E.2d 446, 461 (Ill. 2008). Under Illinois law, the subject of a conversion claim must be an identifiable object of property. "Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked. However, an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." <u>In re Thebus</u>, 483 N.E.2d 1258, 1260 (Ill. 1985). Furthermore, it must be shown that the money claimed belonged to plaintiff at all times and

that defendant converted the money to its own use.  Id. at 1261;
Horbach v. Kaczmarek, 288 F.3d 969, 978 (7th Cir. 2002).

PIL asserts that Song has failed to state a claim for
conversion because the complaint does not identify a specific
amount of money that Song alleges to have been converted.  In PIL's
view, "Song's conversion claim is nothing more than a restatement
of his claim for breach of contract that rests on PIL's failure to
pay royalties." (Mem. in Support of Mot. to Dismiss at 7.)  In his
response brief, Song contends that the funds are specifically
identifiable because PIL has deposited $66,703 "that it admits it
owes to Song" into an escrow account managed by PIL's counsel.
(Pl.'s Br. in Opp'n at 7.)  The problem is that Song fails to
allege in his complaint that a specific fund or specifically-
identifiable money was converted, or that this specific fund
belonged to him at all times.  Song merely claims a right to an
indeterminate sum of royalties.

We agree with PIL that Count IV is simply plaintiff's breach
of contract claim improperly dressed as a conversion claim; it will
therefore be dismissed with prejudice.

**C.   Consumer Fraud (Count V)**

To state a claim under the Illinois Consumer Fraud and
Deceptive Business Practices Act ("CFDBPA"), 815 ILCS 505/1 et
seq., a plaintiff must plead a deceptive act or practice by the
defendant; the defendant's intent that the plaintiff rely on the

deception; and that the deception occurred during a course of
conduct involving trade or commerce. <u>Robinson v. Toyota Motor
Credit Corp.</u>, 775 N.E.2d 951, 960 (Ill. 2002). Where a plaintiff
attempts to allege a violation of the CFDBPA in a case that appears
on its face to involve only a breach of contract, we must ask
whether the alleged conduct implicates consumer-protection
concerns. <u>Lake County Grading Co. of Libertyville, Inc. v. Advance
Mech. Contractors, Inc.</u>, 654 N.E.2d 1109, 1116 (Ill. App. Ct.
1995).

PIL argues that Song's CFDBPA claim must be dismissed for two
reasons: (1) like the claims discussed <u>supra</u>, it is nothing more
than a restatement of plaintiff's contract claim; and (2) Song is
not a consumer and the alleged conduct does not otherwise implicate
consumer-protection concerns. Song contends that he is a consumer
because he was purchasing a "service" from defendants--the
marketing, advertising, and distribution of products embodying his
invention. Even if he is not a consumer, he asserts, the
transaction implicates consumer-protection concerns because it was
a "scheme by a large corporation to take advantage of a small
family owned company to steal the assets of the company." (Pl.'s
Br. in Opp'n at 9.) It is Song's position that he alleges more
than just a false promise of future performance because the promise
was part of this alleged scheme. (<u>Id.</u> at 10.)

In <u>Avery v. State Farm Mutual Auto Insurance Co.</u>, 835 N.E.2d

801 (Ill. 2005), the Illinois Supreme Court held that a defendant's

repeated failures to fulfill contractual promises made to certain

consumers were not actionable under the CFDBPA and explained as

follows:

> A breach of contractual promise, without more, is not
> actionable under the Consumer Fraud Act. . . . What
> plaintiff calls "consumer fraud" or "deception" is simply
> defendants' failure to fulfill their contractual
> obligations. Were our courts to accept plaintiff's
> assertion that promises that go unfulfilled are
> actionable under the Consumer Fraud Act, consumer
> plaintiffs could convert any suit for breach of contract
> into a consumer fraud action. However, it is settled
> that the Consumer Fraud Act was not intended to apply to
> every contract dispute or to supplement every breach of
> contract claim with a redundant remedy. We believe that
> a "deceptive act or practice" involves more than the mere
> fact that a defendant promised something and then failed
> to do it. That type of "misrepresentation" occurs every
> time a defendant breaches a contract.

<u>Id.</u> at 844 (internal quotation marks omitted). Thus, as a matter

of law, Song's CFDBPA claim may not be based solely on the

assertion that PIL promised to pay royalties on products using

Song's invention and then failed to pay those royalties. Song

contends that PIL made false promises of future performance as part

of a scheme to defraud him, but the only "scheme" alleged in the

complaint is one to "take advantage of a small family owned company

to steal the assets of the company," Second Am. Compl. ¶¶ 78, 86,

and the only misrepresentations alleged to have been made in

furtherance of that "scheme" are the promises that PIL would pay

royalties on products using Song's invention.[3]  Although Song
invokes a "scheme," the substance of his complaint is that PIL
promised to pay royalties and then failed to do so; this is not an
adequate basis for a claim under the CFDBPA.

Another basis for dismissing Count V is that the APA
contradicts Song's allegation that he is a consumer, and PIL's
alleged misconduct does not implicate consumer-protection
concerns.[4]  The terms of the APA, which labels Song the "Seller"
and PIL the "Purchaser," demonstrate that Song did not purchase any
services from PIL.  Rather, PIL purchased Song's assets.  Moreover,
the alleged conduct does not implicate consumer-protection
concerns.  The (unspecific) allegations of misrepresentations were
made to Song, not the general public.  Song's argument that PIL
obtained a "monopoly right" to unfairly inflate the pricing of the
products allegedly using Song's invention, thereby harming
consumers and giving inventors less incentive to create new
inventions, is farfetched, and it is rejected.

Count V will be dismissed with prejudice.

---

[3]  We will add that, under Federal Rule of Civil Procedure 9(b),
heightened pleading governs fraud claims, including CFDBPA claims.  See Davis v.
G.N. Mortgage Co., 396 F.3d 869, 883 (7th Cir. 2005).  The complaint does not
adequately allege the details of any particular misrepresentation or the
fraudulent scheme and thus fails to meet the requirements of Rule 9(b).

[4]  Documents attached to a motion to dismiss are considered part of the
pleadings if they are referred to in the complaint and are central to plaintiff's
claim.  Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th
Cir. 1993). The APA is attached to the motion to dismiss, is explicitly referred
to in the complaint, and is central to Song's claim.

**D.    Common-Law Fraud (Count VI)**

In Count VI, Song alleges that PIL committed common-law fraud when it represented that it would pay royalties on products using Song's invention knowing that it was not going to pay those royalties.  PIL asserts that this is a promissory fraud claim, which is not actionable under Illinois law unless the promises of future conduct are "particularly egregious or, what may amount to the same thing, [are] embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy."  See Desnick v. American Broad. Cos., 44 F.3d 1345, 1354 (7th Cir. 1995) (citing Illinois law).

Song contends that he has adequately pled a scheme to defraud because he has alleged that PIL "repeatedly promised" that it would pay royalties on products utilizing his invention and did not intend to do so.  His allegations about these repeated promises, however, are not specific as required by Rule 9(b), nor are there true allegations of "repeated" promises.  The most specific allegation, which is insufficient, is that Richard Maddrell, who is unidentified but presumably an agent of PIL, made "assurances" "during a meeting at PIL in Chicago in 2003 that PIL would in fact pay the royalties on all products" using Song's invention. (Second Am. Compl. ¶ 14.)  It is not alleged that Maddrell made these "assurances" without the intent to pay royalties.  And no other instances of misrepresentations are alleged specifically.  The

allegations of the complaint fall far short of adequately alleging a "scheme" to defraud. Nor can the promise to pay royalties without the intent to do so be characterized as "particularly egregious." Accordingly, Count VI will be dismissed.

## CONCLUSION

Defendants' motion to dismiss Counts II through VI is granted. Counts II, III, IV, V, and VI of the Second Amended Complaint are dismissed with prejudice.


DATE:          June 12, 2009


ENTER:          _____

John F. Grady, United States District Judge